UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 10-cr-20410-LENARD/Turnoff

UNITED STATES OF AMERICA,

      Plaintiff,

v.

SHAHEED RASHARD THOMPSON,
ANTWAN ROHAX GRAY,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the undersigned upon Defendant Shaheed Thompson's Motion to

Suppress Wiretap Evidence, Request for Evidentiary Hearing **[DE 287]**, and Defendant Antwan

Gray's Motion to Suppress the Fruits of Illegal Wiretaps and Searches **[DE 301]**. These matters were

referred to the undersigned by the Honorable Joan A. Lenard, United States District Judge for the

Southern District of Florida. **[DE 289, 309]**. A hearing on these motions was held on November 1,

2010. **[DE 437]**. The Court has considered the written and oral arguments, the testimonial and record

evidence, the court file, the applicable law, and is otherwise duly advised in the premises.

## BACKGROUND

Defendants Shaheed Thompson and Antwan Roshax Gray, along with co-defendants, were

charged in a multi-count superseding indictment with conspiracies to possess with intent to distribute

cocaine, possession of cocaine with intent to distribute, and related offenses in violation of Title 21,

United States Code, Sections 846, 841(a)(1), and other provisions of federal law. Both moved to

CASE NO.: 10-cr-20410-LENARD/Turnoff

suppress all evidence obtained from electronic surveillance conducted in connection with 09-WT-20020, and 09-WT-20027, on the basis that there was insufficient necessity to utilize electronic surveillance, pursuant to 18 U.S.C. § 2518(1)(c). Both Defendants also requested a hearing pursuant to Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674, 57 L.Ed.2d 667 (1978), arguing that the affidavits in support of the wiretap applications were materially inaccurate and misleading. In addition, Defendant Gray moved to suppress evidence obtained from the search of 1282 NE 144 Street, North Miami Beach, Florida ("144 Street"), and a 2008 Lexus automobile ("Lexus"), arguing that the search warrants were based upon the illegal wiretaps and that the affidavits for the search warrants were also misleading and inaccurate under Franks.

The Government argued that the wiretap affidavits complied with the necessity provision of 18 U.S.C. § 2518(1)(c), and that a Franks hearing was unnecessary. Even if the wiretap affidavits were found to be insufficient, the Government argued that they should not be suppressed because the agents reasonably relied on the orders signed by the court authorizing interception. Moreover, the Government argued that, because the wiretap orders were properly issued, the search warrants based upon them were not "fruit of the poisonous tree" and should not be suppressed.

## I.   WIRETAPS

Beginning on August 28, 2009, and continuing through October 23, 2009, the court entered three orders granting the interception of communications by electronic surveillance for cellular devices bearing the phone numbers (305) 747-4219 and (305) 244-1574. Each application was supported by one of three affidavits prepared by Federal Bureau of Investigations ("FBI") Special Agent Lionel S. Lofton, Jr. The first affidavit, dated August 28, 2009, served as the basis for the

subsequent ones, dated September 25, 2009, and October 23, 2009, respectively.

### A.    The Affidavits

The following information is set forth in the August 28, 2009 Affidavit[1]: The FBI gathered certain information from local law enforcement about the targets and their organization. The Miami Gardens Police Department ("MGPD") provided information to the FBI that a specific house on Myrtle Lake Drive, as well as Myrtle Grove Park in general, were being used as meeting/distribution places. Id. at ¶ 25. They were also able to determine the exact location of Defendant Gray's residence, that he was in possession of a target cellular phone, and the cellular phone numbers for various co-defendants. Id. at ¶ 11. Defendant Gray, although not the leader, was one of the primary distributors. Id. at ¶ 20.

Through a confidential source ("CS") who was personally acquainted with Defendant Gray, Id. at ¶ 17, the Government effectuated three controlled purchases of narcotics from Defendant Gray. Id. at ¶¶ 21, 22, 23. Defendant Gray was the only one from whom the CS could purchase narcotics. Id. at ¶ 20. Through the CS, the Government purchased from Defendant Gray 7 grams of cocaine on May 20, 2009; another 7 grams of cocaine on May 27, 2009; and 21 grams of what turned out to be lidocaine and caffeine on June 21, 2009. The CS was not able to provide any information regarding the other members of the organization and their activities. Id. at ¶ 38. In addition, other members of the group were unlikely to confide in the CS with respect to the supply source of narcotics, other distribution points and routes, the identities of ultimate purchasers, storage locations, etc. Id. Further,

---

[1] Agent Lofton personally participated in the investigation of the offenses, consulted with other investigators, and reviewed their reports in preparation of the affidavit. Aug. 28, 2009 Aff. at ¶ 8.

CASE NO.: 10-cr-20410-LENARD/Turnoff

the use of an undercover law enforcement agent was considered, but it was determined that the CS was not in a position to introduce an undercover agent to any members of the organization. Id.

Next, the Affidavit discussed the attempts at physical surveillance. Although drive-by surveillance of the area was possible, it was difficult given the location of the Myrtle Lake Drive house on a busy intersection and the lay out of Myrtle Grove Park. In addition, many people around the neighborhood acted as lookouts. Id. at ¶ 25. Any strange vehicles would be noticed and could jeopardize the investigation. Id. at ¶¶ 25, 27. Surveillance of Myrtle Grove Park was difficult because of obstructed views and the distance from which surveillance had to be positioned. Id. at ¶ 36. In May 2009, agents began periodic drive-by surveillance but were only able to corroborate information they had already obtained from local law enforcement. Id. In this connection, the agents considered trash collection as well, but due to the number of people on the streets, any law enforcement officers would be identified. Id. at 44.

In June 2009, the FBI set up a pole camera to record activity at the Myrtle Lake Drive house from which it was determined that most of the individuals used rental cars. Id. at ¶ 26. However, because the pole camera was limited by weather, sunlight, and other obstructions, they were unable to identify the drivers of the rental cars, what items they may have carried with them, or the purpose of any meeting with other co-conspirators. Id. at ¶¶ 26, 36. Finally, due to suspicion that the targets had a contact within the car rental agency, no subpoenas had been issued for the car rental company records. Id. at ¶ 28.

Agent Lofton subpoenaed billing records for the target telephone from Sprint Nextel Corporation and analyzed the calls between the CS and Defendant Gray for May 20, 2009, and May

CASE NO.: 10-cr-20410-LENARD/Turnoff

27, 2009, the dates of the first and second controlled purchases. Id. at ¶¶ 29, 30, 31. This analysis did not reveal any information regarding the content of the conversations, the identity of the caller, or the full scope and nature of the offenses being investigated. Id. at ¶ 37.

The FBI obtained a pen register-trap and trace on the target telephone for a period of 60 days from May 27, 2009, as well as a second order authorizing its continued use for a period of 60 days from July 22, 2009. Id. at ¶ 33. From these, they were able to establish the number of calls Defendant Gray had with co-defendants but not the content of the conversations or the full scope and nature of the offenses being investigated. Id. at ¶ 37.

The Affidavit further provided that there was insufficient evidence to issue a search warrant in connection with the Myrtle Lake Drive house. Id. at ¶ 40. Moreover, due to the extensive number of places frequented by the targets, there was insufficient specific probable cause to support the issuance of search warrants for all of those locations. Id.

The agents also considered interviewing associates and conspirators of the targets, but these were usually unwilling to provide information, and any information they did provide might not relate to the full scope of the offenses. Id. at ¶ 41. Furthermore, interviewees might attempt to communicate with the targets thus foiling the investigation. Id. at ¶ 42.

The agents also considered the use of a grand jury investigation. However, the best witnesses were the conspirators themselves, who would undoubtedly invoke their constitutional rights. Id. at 43. In addition, it was unknown whether there existed physical records or documents that could serve as proof of the illegal activities. Id. In this connection, Agent Lofton discussed that the organization was involved in money laundering. Id. at 45. However, the FBI has not begun a financial

CASE NO.: 10-cr-20410-LENARD/Turnoff

investigation because no bank accounts or other information has been obtained to determine how the illegal proceeds were being handled. Id.

**B.      Discussion**

Authorization of electronic surveillance is governed by Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520. Title III sets forth the numerous requirements that the Government must meet before wire interceptions may be authorized. See, 18 U.S.C. § 2518(1). Among others, pursuant to 18 U.S.C. § 2518(1)(c), a wiretap application must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. §2518(1)(c). The "necessity" requirement is "designed to ensure that electronic surveillance is neither routinely employed nor used when less intrusive techniques will succeed." United States v. Van Horn, 789 F.2d 1492, 1496 (11th Cir. 1986) (citations omitted). That is not to say that an affidavit must contain a comprehensive exhaustion of all possible techniques; rather, it is measured in a "practical and commonsense fashion." United States v. Hyde, 574 F.2d 856, 867 (5th Cir. 1978) (internal citation omitted). Whether the Government has satisfied the necessity requirement is determined on a case-by-case basis. Van Horn, 789 F.2d at 1508; See also, United States v. Nixon, 918 F.2d 895, 901 (11th Cir. 1990) ("What amount of evidence will be sufficient to obtain a conviction is an imprecise concept").

While a wiretap affidavit does not need to set forth a comprehensive exhaustion of all possible investigative techniques, Van Horn, 789 F.2d at 1496, it must show with specificity why ordinary means of investigation would fail, United States v. Carrazana, 921 F.2d 1557, 1568 (11th

Cir. 1991). Consequently, "courts will not invalidate a wiretap order simply because defense lawyers are able to suggest post factum some investigative technique that might have been used and was not. It is enough if the affidavit explains the prospective or retrospective failure of several investigative techniques that reasonably suggest themselves." Hyde, 574 F.2d at 867. As the Government correctly noted, in United States v. Scibelli, the court stated that "the purpose of the requirement in section 2518(1)(c) is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques." 549 F.2d 222, 227 (1st Cir. 1977) (quoting United States v. Pacheco, 489 F.2d 554 (5th Cir. 1974), cert. denied, 421 U.S. 909, 95 S. Ct. 1558 (1975)). "Courts will not set unduly burdensome standards on the Government's demonstration that no reasonable alternative existed." United States v. Harvey, 560 F.Supp. 1040, 1056 (S.D. Fla. 1982). Indeed, the issuing judge has considerable discretion in deciding whether other investigative methods might have been successfully employed. Id. (citations omitted). Absolute necessity is not a pre-requisite before a wire interception may be ordered.

### 1.    Sufficiency of the Wiretaps

Defendants both challenged the wiretaps arguing that, under 18 U.S.C. § 2518(10)(a)(ii), the approval of the wiretap was insufficient because the affidavit failed to adequately demonstrate a full and complete statement regarding the efficacy of other investigative procedures, as required by 18 U.S.C. § 2518(1)(c).

### a.    Defendant Gray

Defendant Gray attacked the August 28, 2009 Affidavit specifically referencing deficiencies

CASE NO.: 10-cr-20410-LENARD/Turnoff

in Paragraphs 36, 38, 41, 43, and 44. Based upon these alleged deficiencies, he argued that the Government's failure to comply with the necessity requirement provided a statutory basis for suppression.

First, Defendant Gray argued that Paragraph 36, which set forth the attempted physical surveillance, provided only a generic description alleging that the criminal activity under investigation took place in an urban setting. A review of the August 28, 2009 Affidavit shows that Agent Lofton explained the agents' efforts at establishing physical surveillance of the area and the problems attendant thereto. Aug. 28, 2009 Aff., ¶ 36. Physical surveillance was compromised by the location of the Myrtle Lake Drive house on a busy intersection, the lay out of Myrtle Grove Park, the presence of lookouts throughout the neighborhood, and the fact that any unknown vehicle would immediately draw attention. The Affidavit further provided that the agents attempted to conduct drive-by surveillance and employed the use of a pole camera. However, both of these methods yielded minimal results due to their inherent limitations. Drive-by surveillance was compromised by the mere presence of the vehicle in the neighborhood, while the pole camera was limited by natural obstructions, such as shrubbery and weather. Through the use of these methods they were only able to establish that the targets were driving rental vehicles, but were unable to obtain any information regarding the drivers' identities, any items they might be carrying with them, or the purpose of their meetings. Moreover, physical surveillance would not yield evidence of what was transpiring inside the Myrtle Lake Drive house or whether the Myrtle Lake Drive house was being used for meetings, the processing/packaging of narcotics, and/or the storage/packaging of money; neither would it disclose the full scope of the conspiracy nor lead to identification of all co-

CASE NO.: 10-cr-20410-LENARD/Turnoff

conspirators.

Second, Defendant Gray argued that Paragraph 38, which set forth the CS's inability to develop the investigation, failed to specify how the Government tried to use the CS to develop the investigation. Through the CS, the Government was able to conduct three controlled purchases of narcotics. On the third purchase, Defendant Gray provided the CS with fake cocaine, effectively causing the CS to stop dealing with him. Notwithstanding, this investigative method would not have led the Government to identify all co-conspirators nor would it have led to the locations used to store the narcotics and the narcotics proceeds or the manner by which such proceeds were laundered.

Third, Defendant Gray argued that Paragraphs 41 and 43, which set forth the reasons for not attempting to interview witnesses and for not attempting to use a grand jury to further the investigation, failed to consider that people in the neighborhood may have possessed significant knowledge. In this connection, Defendant Gray attacked the allegations in the Affidavit that seeking the cooperation of witnesses would reveal the investigation and that the targeted persons were suspicious of law enforcement. As the Government correctly argued, without the ability to identify who would be sympathetic to Defendants, these techniques would be too dangerous and would risk exposure of the investigation.

Finally, Defendant Gray argued that Paragraph 44, which set forth that trash searches were not possible, provided only a generic claim that investigations in an urban area presented difficulties. Again, the Affidavit provided that, due to the number of people acting as lookouts throughout the neighborhood, any attempts by the agents to remove trash would be immediately discovered.

A review of Defendants' arguments, together with the Government's response, indicate that

there was a lawful basis for ordering the electronic surveillance. The undersigned finds that the Affidavit provided sufficient information regarding the ordinary means of investigation employed and why these were inadequate to comply with the necessity requirement of 18 U.S.C. § 2518(1)(c).

### b.     Defendant Thompson

Defendant Thompson's two grounds for relief concern the failure of the Government to supply certain facts with respect to the evidence outlined in the Affidavit. He argued that Agent Lofton intentionally omitted information from the Affidavit which, if included, would have negated the Court's finding of necessity as to the wiretaps.

First, Defendant Thompson argued that more disclosure needed to be made with respect to the information obtained by the MGPD from the FBI. For example, even though the Affidavit discussed only a few targets, the MGPD knew the identity of many members of the Murda Grove Boys gang. The Government correctly argued that Defendant Thompson offered no explanation how this additional information would have negated the need for a wiretap. The investigation was not targeting the Murda Grove Boys gang, but rather particular members participating in narcotics trafficking and firearms offenses. Thus, the undersigned agrees with the Government's argument that information about other gang members was irrelevant until such time as it was discovered that they were part of those conspiracies.

Second, Defendant Thompson argued that Agent Lofton did not mention co-defendants Artrell Gray and Jerome McMillan in the August 28, 2009 Affidavit, even though the CS knew they were members of the Murda Grove Boys gang. The omission became apparent in the September 25, 2009 Affidavit where these co-defendants were included as new targets of the investigation. As the

CASE NO.: 10-cr-20410-LENARD/Turnoff

Government correctly argued, until the wiretap on Defendant Gray's phone began, it was not known that these two co-defendants were part of the conspiracies.

Finally, Defendant Thompson argued that the MGPD advised the FBI that Defendant Gray was not the leader of the Murda Grove Boys gang, yet the Affidavit did not mention who the leader was. Defendant Thompson's argument is based on the assumption that the MGPD knew or conveyed to Agent Lofton the identity of the leader. As the Government noted, Defendant Thompson provided no proffer that this information was either known to Agent Lofton or that it was provided to him and was intentionally omitted from the Affidavit. As stated *supra*, even if the identity of the leader of the Murda Grove Boys gang was known, unless he/she was also involved in the conspiracies, it was irrelevant to the investigation.

Next, Defendant Thompson argued that the Affidavit offered no explanation as to why surveillance units could not use undercover vehicles with tinted windows. Defendant Thompson offered no proof that these vehicles were available to the agents or that their use would have eliminated the need for a wiretap. Moreover, Agent Lofton provided in the Affidavit that "vehicles not usually seen in the neighborhood would most likely confirm to members of th[e] [*sic*] organization that they are being watched by law enforcement." August 28, 2009 Affidavit, ¶ 27. Moreover, even if surveillance could be conducted, it would only show cars and people traveling to and from particular locations but would not disclose their purpose.

Defendant Thompson further claimed that, although agents had been able to identify some of the drivers of the rental vehicles, as well as some of their residences, the Affidavit did not contain information regarding any investigation done on the rental vehicles. A review of the Affidavit shows

CASE NO.: 10-cr-20410-LENARD/Turnoff

otherwise. The Affidavit set forth that it had been difficult for law enforcement to determine where one particular person was staying on a given night and that they had been unable to determine who was driving the rental vehicles or what their purpose was in coming to the residence. August 28, 2009 Affidavit, ¶ 27-28. Further, the Affidavit provided that, because of a suspected contact in the rental agency, the rental records had not been subpoenaed. Id. at ¶ 28.

Defendant Thompson claimed that there was "very likely" more pen register/ trap and trace analysis regarding other members of the organization that was omitted from the Affidavit. However, he offered no evidence to support this claim or how it would have undermined the necessity for the wiretap. Rather, as the Government argued, the additional telephone contact between Defendant Gray and others involved with narcotics trafficking would increase, not decrease, the necessity for a wiretap. See, e.g., United States v. Cantu, 625 F.Supp. 656, 673 (N.D. Fla. 1985) (finding that use of pen registers is of limited value as an investigative tool because it does not identify the individuals actually making or receiving the calls or the nature and substance of the conversations).

Lastly, Defendant Thompson argued that, even though the Affidavit provided that the use of Grand Jury subpoenas would most likely be fruitless because the targets of the investigation would be alerted thereto, certain subpoenas had already been issued in the case to obtain bank and telephone information. Those subpoenas, however, were directed at institutions not associated with Defendants, such as banks and utility companies. Grand jury subpoenas, on the other hand, would issue to civilian witnesses and other co-conspirators, which would present the problems discussed by Agent Lofton in Paragraph 43 of the Affidavit, i.e., blindly seeking the cooperation of witnesses might reveal the existence of the investigation to the targets.

CASE NO.: 10-cr-20410-LENARD/Turnoff

Defendant's arguments fail to support his contention that there was no lawful basis for ordering electronic surveillance in this case. Defendant has failed to show the existence of any information that would have negated the necessity for a wiretap or that any such information was omitted from the Affidavit. Once again, the undersigned finds that the Affidavit was in substantial compliance with the requirements of § 2518(1)(c).

**2.    Materially Inaccurate and Misleading**

Defendants argued that suppression of the evidence was also warranted because the wiretap applications failed to satisfy Franks, based upon the Government's exclusion of pertinent information in the affidavit and search warrant application. Under Franks, a defendant must initially make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit . . . ." 48 U.S. at 155-56. The burden is on Defendants to show that any omission was intentional or reckless and not merely negligent. Van Horn, 789 F.2d at 1500.

In order to suppress evidence obtained using a wiretap, a defendant must carry his burden of proving that (1) the alleged misrepresentations or omissions were knowingly or recklessly made by the affiant, and (2) the result of excluding the alleged misrepresentations and including the alleged omissions would have been a lack of probable cause for issuance of the warrant. United States v. Novaton, 271 F.3d 968, 986-987 (11th Cir. 2001) (citations omitted). Once a preliminary showing is made, "if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." Franks, 438 U.S. at 155-56; United States v. Arbolaez, 450 F.3d 1283, 1293 (11th Cir. 2006). "To mandate an evidentiary

CASE NO.: 10-cr-20410-LENARD/Turnoff

hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine." Franks, 438 U.S. at 171. Significantly, the "allegations of deliberate falsehood or reckless disregard for the truth must be accompanied by an offer of proof." United States v. Haimowitz, 706 F.2d 1549, 1556 (11th Cir. 1983) (quoting Franks, 438 U.S. at 171, 98 S.Ct. 2674).

Franks also applies to material omissions of fact. Madiwale v. Savaiko, 117 F.3d 1321, 1327 (11th Cir. 1997); United States v. Clapp, 46 F.3d 795, 799 (8th Cir. 1995). Any challenged omissions in an affidavit must have been made intentionally or with a reckless disregard for the accuracy of the affidavit. Madiwale, 117 F.3d at 1327. Omissions are made with reckless disregard if the information omitted is the kind of information that a reasonable person would expect a judge to want to know. Wilson v. Russo, 212 F.3d 781, 788 (3rd Cir. 2000). Negligent or immaterial omissions, however, will not invalidate a warrant. Madiwale, 117 F.3d at 1327. If the defendant is able to establish perjury or reckless disregard for the truth by a preponderance of the evidence, the false material in the affidavit must be excised and the remaining statements analyzed for probable cause. Franks, 438 U.S. 154. If after extraction there is sufficient evidence to support probable cause, no Franks hearing is required; if there is insufficient evidence to support probable cause, then the defendant is entitled to a hearing. Id. at 171-72.

Defendant Thompson argued that the Government failed to supply facts regarding the following information outlined in the Affidavit: (a) information obtained from local law enforcement and the CS; (b) information obtained from surveillance; (c) information obtained from pen register - trap and trace; and (d) information obtained through subpoena and other evidence. In turn, Defendant

Gray argued that the Affidavit: (a) was based on the rumored claims of a CS because Agent Lofton had no personal knowledge of the CS' reliability; (b) contained unsubstantiated allegations regarding drug transactions based upon Agent Lofton's interpretation of the intercepted calls, as specifically referenced in Paragraphs 18, 21, 22, and 23; and (c) contained information in Paragraph 18 that did not pertain directly to Defendant Gray. With respect to the September 25, 2009, and October 23, 2009 Affidavits, Defendant Gray argued that they were based upon information obtained from the prior illegal wiretap and contained unsubstantiated allegations as well. Specifically, he argued that Agent Lofton misinterpreted the language found in Paragraph 17 of the September 25th Affidavit and in Paragraphs 25 and 28 of the October 23rd Affidavit.

The Government argued that Defendants failed to make any preliminary showing that Agent Lofton deliberately or recklessly omitted facts that misled the court into believing there was necessity for the wiretap. A "substantial preliminary showing" requires that the attack be "more than conclusory and must be supported by more than a mere desire to cross-examine." Franks, 438 U.S. at 171; 98 S. Ct. at 2684.

According to Defendant Thompson, the Affidavit set forth that Defendant Gray's telephone had one contact with a telephone used by an individual in another independent investigation being conducted by the FBI. He argued that Agent Lofton supplied "no other information regarding what conclusions could be drawn from the new knowledge that a smuggler who was part of a separate ongoing FBI investigation was in contact with Gray." **[DE 287]** at p. 13. A review of the Affidavit shows that this matter was discussed in Paragraph 33(g). More importantly, however, Defendant Thompson offered no proof nor made any argument as to how this information, if true, would have

CASE NO.: 10-cr-20410-LENARD/Turnoff

undermined the Court's finding of necessity with respect to the wiretap.

The undersigned finds that Defendant Thompson's allegations are conclusory and unsupported by offers of proof. He has failed to provide the allegedly omitted facts with any specificity, which makes the Court unable to determine if they were recklessly or intentionally omitted. As such, a <u>Franks</u> hearing is not warranted.

Defendant Gray argued that Agent Lofton's interpretation of intercepted conversations between him and the CS, as set forth in Paragraphs 21, 22, and 23 of the Affidavit, were incorrect. He further argued that the September 25, 2009 and October 23, 2009 Affidavits failed to establish probable cause because he disagreed with Agent Lofton's interpretation of the intercepted phone calls. In this regard, Defendant Gray did not challenge the factual accuracy of the conversations, but rather Agent Lofton's interpretation. However, he did not provide alterative interpretations, nor did he set forth any evidence that the incorrect interpretations were made knowingly or intentionally or with reckless disregard for the truth. Part of the conversations involved the CS who presumably explained their meaning to the agents. Those agents then generated reports that were reviewed by Agent Lofton in drafting the Affidavit. Moreover, as the Government pointed out, the important matter was not so much what was said as the fact that Defendant Gray met with the CS and sold him narcotics. Finally, Agent Lofton included excerpts of the actual conversations, as well as his interpretations, in the Affidavit. The Court could have declined to sign the wiretap order if it did not agree with the agent's interpretations.

Defendant Gray further argued that Agent Lofton had no personal knowledge of the CS' reliability. The Affidavit provided that, although Agent Lofton had not personally dealt with the CS,

CASE NO.: 10-cr-20410-LENARD/Turnoff

since November 2008 other agents and officers had. Agent Lofton reviewed reports of information provided by the CS and concluded that the information was reliable. Defendant Gray did not argue that any of the information concerning the CS was false.

Next, Defendant Gray argued that none of the information in Paragraph 18 pertained to him. However, Defendant Gray did not allege that anything contained therein was falsely included or omitted.

The undersigned finds that Defendant Gray's allegations are conclusory and unsupported by offers of proof, as Defendant Gray offered no proof, statement of supporting reasons, affidavits, or any explanation for their absence. He has not alleged that anything contained in the Affidavit was falsely included or omitted. Thus, a <u>Franks</u> hearing is not warranted.

As discussed herein, Defendants' allegations are insufficient to establish that the Government intentionally or recklessly misrepresented any information in the Affidavits supporting the wiretap applications. There is no evidence that the wiretap applications omitted or misrepresented any information that resulted in a lack of probable cause. The wiretap orders were issued by neutral and detached judges and contained ample probable cause for authorizing the wire interceptions. Thus, the agents who executed the wiretap orders were entitled to rely on them in good faith. <u>See</u> <u>United States v. Leon</u>, 468 U.S. 897, 104 S. Ct. 3405, 82 L.Ed.2d 677 (1984) (finding that the exclusionary rule did not require suppression of evidence gathered in good faith on a facially valid warrant). Because Defendants have failed to make a preliminary showing that a false statement knowingly and intentionally or recklessly was included in the affidavit, no hearing is required pursuant to <u>Franks</u>.

CASE NO.: 10-cr-20410-LENARD/Turnoff

Finally, although the Court need not address whether the good faith exception to the exclusionary rule applies, a brief discussion is warranted. The Government argued that, even if the Affidavits were found to be deficient in probable cause, suppression was not warranted and the agents were entitled to rely in good faith upon the wiretap orders pursuant to the exclusionary rule. In United States v. Leon, 468 U.S. 897, 104 S. Ct. 3405, the Supreme Court determined that the exclusionary rule did not require suppression of evidence gathered in good faith on a facially valid warrant. The Eleventh Circuit has applied Leon to circumstances involving a wiretap. See United States v. Malekzadeh, 855 F.2d 1492, 1497 (11th Cir.1988) (applying good faith exception to the exclusionary rule to wiretaps). Here, the undersigned found that the affidavits supporting the wiretap orders were valid. As such, the agents were entitled to rely upon those orders in good faith.

### Conclusion

The undersigned finds that the Affidavit submitted in support of the wiretap application is more than sufficient to satisfy Title III's necessity requirement. The Affidavit detailed the steps taken by law enforcement during their investigation of Defendants' alleged drug-trafficking organization. Agent Lofton described the techniques utilized and how despite their use, agents were unable to identify the full scope and membership of the drug-trafficking organization, as well as supply sources and concealment locations for drug-related proceeds and assets. Agent Lofton also described how other investigative techniques were not reasonably likely to succeed in producing sufficient evidence to determine the full scope and nature of the conspiracy. Contrary to Defendants' assertions, the Government has made an adequate showing that it had not achieved the goals of its investigation through available traditional investigative methods.

CASE NO.: 10-cr-20410-LENARD/Turnoff

## II.    SEARCH WARRANT

On November 13, 2009, the Government obtained search warrants based upon the same Affidavit to be executed at five locations and a Lexus. Defendant Gray argued that the probable cause in the search warrant resulted from the illegal wiretaps and was materially inaccurate and misleading because the search warrant affidavits mis-characterized information purportedly intercepted in the wiretaps.

Search warrants may only be issued upon a showing of probable cause which entails "a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Phillips, 327 Fed. App'x 855, 859 (11th Cir. 2009) (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332 (1983)). Evidence that is obtained through an illegal warrant must be suppressed. Phillips, 327 Fed. App'x at 859 (citing Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417 (1963)). Warrants are illegal if they are based on deliberate or reckless misrepresentations that are essential to a finding of probable cause. United States v. Cross, 928 F.2d 1030, 1040 (11th Cir. 1991). Where misstatements result from negligence or innocent mistake, they are insufficient to invalidate a warrant. Franks, 438 U.S. at 171, 98 S.Ct. at 2084.

In assessing the validity of a search warrant, the Court must consider: "(1) whether the alleged misstatements in the affidavit were made either intentionally or in reckless disregard for the truth, and, if so, (2) whether, after deleting the misstatements, the affidavit is insufficient to establish probable cause." United States v. Kirk, 781 F.2d 1498, 1502 (11th Cir. 1986) (citing Franks, 438 U.S. at 171, 98 S.Ct. at 2684). The burden is on the defendant to show that, absent those misrepresentations, probable cause would not have existed. Novaton, 271 F.3d at 987. "Insignificant

CASE NO.: 10-cr-20410-LENARD/Turnoff

and immaterial misrepresentations or omissions will not invalidate a warrant." United States v. Ofshe, 817 F.2d 1508, 1513 (11th Cir. 1987).

Defendant Gray argued that the probable cause in the search warrant affidavits referenced information obtained from the illegal wiretap intercepts and could not serve as the basis for a search warrant. Wong Sun, 371 U.S. 471. Moreover, Defendant Gray argued that the search warrant affidavits were materially inaccurate and misleading because the Affidavit misconstrued and mischaracterized the contents of the intercepted communications. According to Defendant, when read with the offending portions excised, there was insufficient probable cause contained in the affidavit to support issuance of the search warrants for 144 Street and the Lexus. However, Defendant failed to show how the search warrant affidavits were materially inaccurate and misleading due to mischaracterizations of intercepted wire communications.

Relying on Leon once again, the Government argued that, even assuming *arguendo* that the affidavits lacked probable cause, the appropriate remedy would not be suppression. 468 U.S. 897, 104 S. Ct. 3405. Moreover, the Government argued that the wiretap orders were not improperly issued so that any warrants based thereon were not the "fruit of the poisonous tree." The undersigned agrees.

As discussed *supra*, the undersigned found that the affidavits supporting the wiretap orders were valid such that the agents were entitled to rely upon them in good faith. Thus, Defendants' arguments that the probable cause in the search warrant affidavits based thereon could not serve as the basis for a search warrant fail.

CASE NO.: 10-cr-20410-LENARD/Turnoff

**Recommendation**

Based on the foregoing, it is hereby **RESPECTFULLY RECOMMENDED** that Defendant Shaheed Thompson's Motion to Suppress Wiretap Evidence, Request for Evidentiary Hearing **[DE 287]** be **DENIED**, and Defendant Antwan Gray's Motion to Suppress the Fruits of Illegal Wiretaps and Searches **[DE 301]** be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1)(c), the parties may file written objections to this Report and Recommendation with the Honorable Joan A. Lenard, United States District Judge, within fourteen (14) days of receipt. Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein. RTC v. Hallmark Builders, Inc., 996 F.2d 1144 (11th Cir. 1993); LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988).

**RESPECTFULLY RECOMMENDED** in Chambers, at Miami, Florida, this 30 day of March 2011.

WILLIAM C. TURNOFF
**United States Magistrate Judge**

cc:   Hon. Joan A. Lenard
      All counsel of record